IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No.: 1:15-cv-64

| | |
|---|---|
| CHEYENNE INTERNATIONAL, LLC, <br> a North Carolina Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> VAPE AURA, LLC <br> a California Limited Liability Company, <br><br> Defendant. | **COMPLAINT** <br> **AND DEMAND FOR JURY TRIAL** |

Plaintiff Cheyenne International, LLC complains of the Defendant Vape Aura, LLC as follows:

## NATURE OF ACTION

1. This is a civil action seeking injunctive relief and damages against Defendant: (i) for infringement of a federally registered trademark in violation of § 32 of the Federal Trademark Act of 1946, also known as the Lanham Act, codified at 15 U.S.C. § 1114, *et seq.*; (ii) for violation of § 43(a) of the Lanham Act, codified as 15 U.S.C. § 1125(a), *et seq.*; (iii) for trademark infringement in violation of North Carolina common law; (iv) for unfair competition in violation of North Carolina common law; (v) for unfair and deceptive trade practices and unfair methods of competition in violation of the North Carolina Unfair and Deceptive Trade Practices Act, codified at N.C. Gen. Stat. § 75-1.1, *et seq.*; and (vi) opposing Defendant's application for registration under 15 U.S.C. § 1119.

2. Trademark law and the law of unfair competition protect trademark owners from the unauthorized use of their marks, and also protect the public from confusion regarding the source of products or services, or the affiliation of the parties. Confusion occurs when a junior

user uses a mark that is the same as or confusingly similar to the senior user's mark and creates a likelihood that customers will mistakenly think that a junior user's goods or services originate from, or are affiliated with, the senior user.

3. This is a trademark infringement and unfair competition case in which the Defendant is selling flavored nicotine liquids for use in vaporizers, e-cigarettes and related products and services under the mark "VAPE AURA" (the "VAPE AURA Word Mark") and a stylized version of the VAPE AURA mark shown directly below (the "VAPE AURA Design Mark"):



(The VAPE AURA Word Mark and VAPE AURA Design Mark are referred to collectively herein as the "Infringing Marks").

4. Defendant has engaged in such conduct in spite of the fact that Plaintiff has used its AURA trademark in connection with cigarettes and related products beginning at least as early as 2009.

## THE PARTIES

5. Plaintiff Cheyenne International, LLC ("Cheyenne" or "Plaintiff") is a limited liability company formed and existing under the laws of the State of North Carolina. Cheyenne maintains its principal place of business at 701 S. Battleground Avenue in Grover, North Carolina.

6. Defendant Vape Aura, LLC ("Vape Aura" or "Defendant") is a limited liability

PPAB 2718179v6                                2
Case 1:15-cv-00064-MR   Document 1   Filed 03/23/15   Page 2 of 17

company organized and existing under the laws of the State of California. Vape Aura maintains a principal place of business at 8055 Clairemont Mesa Boulevard, Suite 108, San Diego, California. Upon information and belief, Vape Aura is doing business in this judicial district related to the claims asserted in this complaint.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action arises under the Lanham Act. This Court has supplemental jurisdiction over Cheyenne's related state law claims under 28 U.S.C. § 1367(a).

8. On information and belief, this Court has personal jurisdiction over Vape Aura because Vape Aura has purposefully availed itself of the privilege of doing business in this District by owning and operating an interactive website that is accessible to Internet users in this District from which Vape Aura offers to sell and does sell products under the Infringing Marks to residents of this District and in other parts of North Carolina, and from which Vape Aura's products under the Infringing Marks can be ordered and have been ordered by purchasers in this District and in other parts of North Carolina, resulting in such products being shipped to such purchasers in this District and in other parts of North Carolina.

9. Venue is proper in this Court under the provisions of 28 U.S.C. § 1391.

## MATERIAL FACTS

*Cheyenne*

10. Cheyenne is a full line tobacco product manufacturer that serves both domestic and international markets.

11. From its location in North Carolina, the heart of American tobacco country, Cheyenne creates exciting tobacco products made to high quality standards. Cheyenne focuses on customer partnerships and providing its customers with quality products at a fair price.

12. Cheyenne's AURA-branded line of tobacco products is crafted from 100 percent additive-free tobacco. Cheyenne's cigarettes sold under the AURA brand are available in the brand styles of Aura Robust Red, Aura Radiant Gold, Aura Sky Blue and Aura Menthol Glen.

13. Cheyenne owns a federal trademark registration for the mark AURA (U.S. Reg. No. 3,743,189) for "cigarettes, cigars, little cigars, cigarillos, smokeless tobacco, snuff, chewing tobacco, smoking tobacco, and cigarette papers." (A true and correct copy of the Registration Certificate for the AURA trademark is attached hereto as **Exhibit A** and is incorporated herein by reference).

14. Further, on August 1, 2014, Cheyenne filed a U.S. trademark application, Serial No. 86/355,333, to register its AURA mark in connection with additional goods – including flavored nicotine liquids for use in vaping products – based on Cheyenne's intent to use the mark for such goods. Specifically, Cheyenne's application covers "accessories for electronic cigarettes, cigars, cigarillos, and hookahs, namely, cartridges sold filled with propylene glycol and cartridges sold filled with vegetable glycerin; disposable and reusable cartridges filled with vaporizable nicotine-based liquid, for use with battery powered, rechargeable portable vaporizing units in the nature of electronic cigarettes and vaporizer pipes; accessories for electronic cigars, cigarettes, cigarillos, and hookahs, namely, batteries, battery chargers, and power supplies; electronic vaporizers; electronic cigarettes; electronic cigars; electronic cigarillos; electronic hookahs; cigarettes, cigars, cigarillos, and hookahs containing tobacco substitutes not for medical use; smokeless cigarette, smokeless cigar, and smokeless cigarillo vaporizer pipes; disposable electronic cigarettes, cigars, cigarillos, and hookahs; electronic cigarette, electronic cigar, and electronic hookah kits consisting of smoking pipes, cartomizers, namely, combination electronic cigarette refill cartridges sold empty, and atomizers, sold as a component of electronic cigarettes, electronic cigars, and electronic hookahs, carrying cases, and structural parts for electronic

cigarettes, electronic cigars, and electronic hookahs; smokers' articles, namely, battery powered, rechargeable portable vaporizing units in the nature of vaporizers for the personal inhalation of tobacco; cartridges sold filled with chemical flavorings in liquid form for electronic cigarettes, cigars, cigarillos, and hookahs; and electronic cigarette, cigar, cigarillo, and hookah liquids (e-liquids) comprised of flavorings in liquid form used to refill electronic cigarette, cigar, cigarillo, and hookah cartridges." (A true and correct printout of the summary record associated with Cheyenne's trademark application, printed from the Trademark Electronic Search System on the United States Patent and Trademark Office website, is attached hereto as **Exhibit B** and is incorporated herein by reference).

15. At all times relevant to its claims, Cheyenne has been engaged in the manufacture, advertising, promotion, marketing, distribution, offering for sale, and sale of various types of tobacco products under the AURA mark in North Carolina and numerous other states.

*Vape Aura*

16. "Vaping" describes the process by which a person inhales vapor from a vaporizer or electronic cigarette (a/k/a "e-cigarette" or "e-cig"). Vaping is, and is intended to be, similar to and a substitute for smoking a tobacco cigarette or other tobacco product. Likewise, the term "vape" means to inhale vapor from a vaporizer or electronic cigarette just as the term "smoke" means to inhale smoke from a tobacco cigarette or other tobacco product.

17. Vape Aura sells its products from its interactive website located at www.vapeaura.com. (A true and correct printout of the homepage of Vape Aura's website is attached hereto as **Exhibit C** and is incorporated herein by reference).

18. From its website, Vape Aura advertises and sells a line of flavored vapor liquids for use with vaporizers, e-cigarettes and other vaping products under the Infringing Marks. The

vapor liquids (also known as "e-liquids" or "e-juices") that Vape Aura advertises and sells under the Infringing Marks come in a variety of flavors, including several tobacco flavors, such as "Tobaccy" and "Cigar." (A true and correct printout of a page of Vape Aura's website showing its tobacco flavors is attached hereto as **Exhibit D** and is incorporated herein by reference).

19. Vape Aura operates and controls the website located at www.vapeaura.com from which it advertises, offers for sale, and sells flavored e-liquids under the Infringing Marks. Vape Aura intends for such products to be used in connection with vaporizers, e-cigarettes and other vaping products.



(A true and correct printout of a page of Vape Aura's website from which one of Vape Aura's products can be purchased online is attached hereto as **Exhibit E** and is incorporated herein by reference. A portion of Exhibit E appears directly above).

20. On its Facebook® page, Vape Aura describes itself as a "tobacco store."



Vape Aura also states that it has "the best e-cigs on the market along with the best fluid." (A true and correct printout of the "About" part of Vape Aura's Facebook® page, located at www.facebook.com/vapeaura, is attached hereto as **Exhibit F** and is incorporated herein by reference. A portion of Exhibit F appears directly above).

21. On information and belief, Vape Aura has sold, and continues to sell, to customers in the United States, including North Carolina, e-liquids for use with vaporizers, e-cigarettes and other vaping products under trademarks that are confusingly similar to, and a colorable imitation of, Cheyenne's federally registered AURA trademark.

22. Vape Aura does not have Cheyenne's permission to use the AURA trademark.

23. Vape Aura has infringed and continues to infringe Cheyenne's AURA mark in spite of having actual and/or constructive knowledge of Cheyenne's rights in the AURA mark since at least as early as October 28, 2008.

24. On December 18, 2014, counsel for Cheyenne sent Vape Aura a letter concerning Vape Aura's infringement of Cheyenne's AURA mark. (A true and correct copy of the December 18, 2014 letter is attached as **Exhibit G** hereto and is incorporated herein by

reference).

25. On January 7, 2015, Vape Aura filed a U.S. trademark application, Serial No. 86/497,561, to register the VAPE AURA word mark for "Electric cigarettes; Electronic cigarette liquid (e-liquid) comprised of flavorings in liquid form used to refill electronic cigarette cartridges; Electronic cigarette liquid (e-liquid) comprised of propylene glycol; Electronic cigarette liquid (e-liquid) comprised of vegetable glycerin; Flavorings, other than essential oils, for use in electronic cigarettes; Liquid nicotine solutions for use in electronic cigarettes." (A true and correct printout of the summary record associated with the VAPE AURA trademark application printed from the Trademark Electronic Search System on the United States Patent and Trademark Office website is attached hereto as **Exhibit H** and is incorporated herein by reference).

26. In its trademark application, Vape Aura claims to have been using the VAPE AURA mark in United States commerce in connection with the goods listed in the application since March 22, 2013. (*See* Exhibit H).

27. Despite having actual and constructive notice of Cheyenne's superior rights in the AURA mark, Vape Aura's use of the Infringing Marks has continued.

28. Unless enjoined by this Court, Vape Aura's conduct will continue to result in a likelihood of consumer confusion and irreparable injury to Cheyenne.

**FIRST CLAIM FOR RELIEF**
**(TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114)**

29. Cheyenne repeats and incorporates by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 28 of this complaint.

30. This claim is brought under 15 U.S.C. § 1114 for willful infringement of Cheyenne's federally registered AURA mark, reflected in U.S. Reg. No. 3,743,189.

31. Cheyenne's use of the AURA mark predates any use by Vape Aura of the

PPAB 2718179v6

8

Case 1:15-cv-00064-MR   Document 1   Filed 03/23/15   Page 8 of 17

Infringing Marks.

32. Vape Aura's use of the Infringing Marks in United States commerce in connection with the sale, offering for sale, distribution, and advertising of goods which are in direct competition and/or overlap with goods offered by Cheyenne under the AURA mark, is likely to cause confusion, or to cause mistake, and/or to deceive the public in violation of 15 U.S.C. § 1114, and infringes Cheyenne's federally registered AURA mark.

33. On information and belief, Vape Aura's acts of trademark infringement have been committed with the intent to cause confusion, mistake or deception, and are in violation of Cheyenne's rights under section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a), and have been deliberate, willful, and in callous disregard of Cheyenne's rights.

34. Vape Aura had constructive knowledge of Cheyenne's federal registration of the AURA mark prior to Vape Aura's adoption and first use of the Infringing Marks.

35. On information and belief, Vape Aura had actual knowledge of Cheyenne's prior use of the AURA mark prior to Vape Aura's adoption and first use of the Infringing Marks.

36. On information and belief, Vape Aura adopted and is using the Infringing Marks knowingly in violation of, and in reckless disregard of, Cheyenne's rights in the AURA mark.

37. On information and belief, Vape Aura knew of Cheyenne's prior use of the AURA mark and intended to induce and did induce, and intends to induce and will induce, consumers to purchase Vape Aura's goods by trading off the extensive goodwill built up by Cheyenne in the AURA mark.

38. Vape Aura's actions complained of herein have caused, and are causing, irreparable harm to Cheyenne through a likelihood of confusion.

39. Through, without limitation, its use of the Infringing Marks, which are confusingly similar to the AURA mark, Vape Aura has willfully infringed Cheyenne's AURA

mark.

40. Vape Aura' willful and callous misconduct makes this an exceptional case, entitling Cheyenne to have any monetary remedies trebled, and to recover its attorneys' fees under 15 U.S.C. § 1117.

41. Cheyenne has been and will continue to be irreparably injured by Vape Aura's conduct described herein. Cheyenne cannot be adequately compensated for these injuries by monetary remedies alone, and Cheyenne has no adequate remedy at law for Vape Aura's infringement of its rights. Cheyenne is therefore entitled to injunctive relief against Vape Aura, and to recover any damages proven to have been caused, or any profits of Vape Aura which have been earned unjustly, by reason of Vape Aura's acts of infringement.

**SECOND CLAIM FOR RELIEF**
**(FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION**
**UNDER 15 U.S.C. § 1125(a),** *et seq.***)**

42. Cheyenne repeats and incorporates by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 41 of this complaint.

43. This claim is brought under 15 U.S.C. § 1125(a) for false designation of origin and unfair competition.

44. Cheyenne's AURA mark is valid and enforceable.

45. Cheyenne's use of the AURA mark predates any use by Vape Aura of the Infringing Marks.

46. Vape Aura has used the Infringing Marks in commerce in the United States in connection with the sale, offering for sale, distribution, and advertising of products which are in direct competition and overlap with products offered by Cheyenne under Cheyenne's AURA mark.

47. Vape Aura's adoption and use of the confusingly similar Infringing Marks in

commerce are likely to cause confusion, or to cause mistake, or to deceive as to Vape Aura's affiliation, connection, or association with Cheyenne, and/or as to the origin, sponsorship, or approval of Vape Aura's goods or services by Cheyenne, in violation of 15 U.S.C. § 1125(a).

48. On information and belief, Vape Aura adopted and is using the Infringing Marks in knowing violation of, and in reckless disregard of, Cheyenne's rights in the AURA mark.

49. The activities of Vape Aura complained of herein constitute willful and intentional infringement of Cheyenne's AURA mark, and were commenced and have continued in spite of Vape Aura's actual and constructive knowledge of Cheyenne's rights in the AURA mark, and in spite of Vape Aura's knowledge that its activities were and are in direct contravention of Cheyenne's rights.

50. Vape Aura's willful and callous misconduct makes this an exceptional case, entitling Cheyenne to have any monetary remedies trebled, and to recover its attorneys' fees under 15 U.S.C. § 1117.

51. Cheyenne has been and will continue to be irreparably injured by Vape Aura's conduct. Cheyenne cannot be adequately compensated for these injuries by monetary remedies alone, and Cheyenne has no adequate remedy at law for Vape Aura's infringement of its rights. Cheyenne is therefore entitled to injunctive relief against Vape Aura, and to recover any damages proven to have been caused, or any profits of Vape Aura which have been earned unjustly, by reason of Vape Aura's acts of infringement.

### THIRD CLAIM FOR RELIEF
### (COMMON LAW TRADEMARK INFRINGEMENT)

52. Cheyenne repeats and incorporates by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 51 of this complaint.

53. This is a claim for common law trademark infringement arising under the common law of the state of North Carolina.

PPAB 2718179v6

11

Case 1:15-cv-00064-MR   Document 1   Filed 03/23/15   Page 11 of 17

54. Vape Aura is using in this State the Infringing Marks, which are confusingly similar to Cheyenne's AURA mark. Such unauthorized use by Vape Aura constitutes trademark infringement under North Carolina common law.

55. The activities of Vape Aura complained of herein have the natural and probable tendency to deceive the public and create confusion as to the source of Cheyenne's and Vape Aura's products and as to the existence of an affiliation between Vape Aura and Cheyenne. As a result, members of the public are likely to be confused and deceived.

56. Vape Aura's unlawful acts violate Cheyenne's common law trademark rights and have damaged and continue to damage Cheyenne, causing irreparable harm, for which there is no adequate remedy at law. Such unlawful acts and damage will continue to occur unless enjoined by this Court.

57. Cheyenne is entitled to injunctive relief against Vape Aura, and, after trial, to recovery of any damages proven to have been caused, or profits earned unjustly, by reason of Vape Aura's acts of infringement.

## FOURTH CLAIM FOR RELIEF
### (COMMON LAW UNFAIR COMPETITION)

58. Cheyenne repeats and incorporates by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 57 of this complaint.

59. This is a claim for common law unfair competition arising under the common law of the state of North Carolina

60. Vape Aura's adoption and use of the Infringing Marks constitutes common law unfair competition in violation of the common law of North Carolina.

61. Cheyenne has sustained, and will continue to sustain, irreparable injury as a direct and proximate cause of Vape Aura's unfair competition

62. The aforesaid unlawful acts by Vape Aura will continue unabated unless and until

PPAB 2718179v6                                    12
Case 1:15-cv-00064-MR   Document 1   Filed 03/23/15   Page 12 of 17

enjoined by this Court.

63. Cheyenne is entitled to injunctive relief against Vape Aura, and, after trial, to recovery of any damages proven to have been caused, or any profits earned unjustly, by reason of Vape Aura's acts of infringement.

**FIFTH CLAIM FOR RELIEF**
**(UNFAIR AND DECEPTIVE TRADE PRACTICES**
**UNDER N.C. GEN. STAT. § 75-1.1,** *et seq.***)**

64. Cheyenne repeats and incorporates by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 63 of this complaint.

65. This is a claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, *et seq.*

66. Vape Aura's use of the Infringing Marks, which are confusingly similar to Cheyenne's AURA mark, has injured Cheyenne by creating a likelihood of confusion, and harming the goodwill of Cheyenne's AURA mark.

67. On information and belief, Vape Aura adopted the Infringing Marks with actual and/or constructive knowledge that Cheyenne had prior rights in and was using a confusingly similar mark.

68. Vape Aura's conduct complained of herein is immoral, unethical, oppressive, unscrupulous, and offends the ethos of the marketplace.

69. Vape Aura's conduct complained of herein was and is in or affecting commerce.

70. Under N.C. Gen. Stat. § 75-1.1, Vape Aura's infringement of Cheyenne's trademark rights and other unlawful conduct complained of herein constitutes an unfair method of competition in or affecting commerce and is an unfair and deceptive act or practice in and affecting commerce.

71. Vape Aura has also engaged in deceptive acts and practices because its infringement of Cheyenne's AURA mark has the capacity or tendency to deceive consumers.

72. Cheyenne has sustained, and will continue to sustain, irreparable injury and harm, including harm to its rights in the AURA mark and to its reputation and goodwill, as a direct and proximate result of Vape Aura's unfair and deceptive trade practices and unfair methods of competition.

73. Vape Aura's unfair and deceptive activities have damaged Cheyenne and, unless restrained, will continue to damage Cheyenne, including causing irreparable injury to Cheyenne for which Cheyenne has no adequate remedy at law.

74. Cheyenne is entitled to and seeks recovery from Vape Aura of all damages caused by, and all profits earned unjustly by, Vape Aura's actions in violation of N.C. Gen. Stat. § 75-1.1 and § 75-16 and to have such damages trebled.

75. Cheyenne is also entitled to and seeks recovery of its reasonable attorneys' fees under to N.C. Gen. Stat. § 75-16.1.

## SIXTH CLAIM FOR RELIEF
### (OPPOSITION TO DEFENDANT'S APPLICATION FOR REGISTRATION UNDER 15 U.S.C. § 1119)

76. Cheyenne repeats and incorporates by reference, as though specifically pleaded herein, the allegations of paragraphs 1 through 75 of this complaint.

77. At the time Vape Aura submitted its application for registration of the VAPE AURA mark, Cheyenne was using and had registered the AURA mark and had acquired superior rights in and to the mark.

78. Pursuant to 15 U.S.C. § 1119, and particularly because Cheyenne owns a relevant federally registered mark, this Court has authority to determine that Defendant's U.S. trademark application Serial No. 86/497,561 for VAPE AURA should be denied.

79. Cheyenne requests that Vape Aura's U.S. trademark application Serial No. 86/497,561 be rejected and that no registration be issued thereon.

80. Cheyenne requests that this Court determine that Vape Aura's application for registration, U.S. trademark application Serial No. 86/497,561, should be denied, and that this Court certify its decree and pertinent orders to the Director of the United States Patent and Trademark Office.

## PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiff demands a trial by jury on all issues so triable and judgment in its favor, and against Defendant, for the following:

1. That the Court enter judgment in Plaintiff's favor and against Defendant on all claims herein.

2. That Defendant be adjudged to have infringed Plaintiff's AURA trademark;

3. That Defendant's infringement and other wrongdoings be adjudged willful in nature;

4. That, pursuant to 15 U.S.C. § 1116(a) and/or North Carolina common law, Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with any of them, be preliminarily and permanently restrained and enjoined from directly or indirectly infringing or otherwise violating Plaintiff's trademark rights in this country by, among other things, the following:

   a. Marketing, promoting, printing, using, selling, distributing, or otherwise disseminating, either directly or indirectly in this country, any goods, services, advertisements or promotional materials of any sort in any medium of communication, or reproducing or causing others to reproduce any products or packaging incorporating any indicia including the term "AURA" or any confusingly similar variation thereof, and

from offering for sale or selling products and services incorporating any indicia incorporating the term "AURA" or any confusingly similar variation thereof;

      b.      Manufacturing, having manufactured, producing, having produced, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying in this country any products or services under or bearing any indicia including the term "AURA" or any confusingly similar variation thereof; and

      c.      Using any false or misleading designations of origin or false or misleading descriptions or representations of fact in this country in connection with the manufacture, production, distribution, circulation, sale, offering for sale, advertising, promotion, or display of its products or services under any indicia including the term "AURA" or any confusingly similar variation thereof;

5.      That Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with any of them, be directed to file with this Court and serve on Plaintiff within thirty (30) days after service of the injunction order, a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

6.      That the Court award pre-judgment and post-judgment interest and costs by virtue of Defendant's infringement of Plaintiff's AURA trademark;

7.      That the Court issue an award to Plaintiff of its damages and/or Defendant's profits to compensate Plaintiff for Defendant's infringement, pursuant to 15 U.S.C. § 1117;

8.      The Court treble the damages awarded with respect the First Claim for Relief and/or the Second Claim for Relief under 15 U.S.C. § 1117, or the Fifth Claim for Relief pursuant to N.C. Gen. Stat. §75-16;

9.      That the Court award Plaintiff its reasonable attorney's fees pursuant to 15 U.S.C.

§ 1117 and N.C. Gen. Stat. §75-16.1, *et. seq*., and other applicable law;

10. That, pursuant to 15 U.S.C. § 1119, the Court determine that no registration should be issued to Vape Aura from U.S. trademark application Serial No. 86/497,561, and that the Court certify its decree and pertinent order to the Director of the United States Patent and Trademark Office; and

11. That Plaintiff be awarded such other and further relief as this Court may deem just and proper.

This the 23rd day of March, 2015.

/s/ Christopher M. Thomas
**PARKER POE ADAMS & BERNSTEIN LLP**
Christopher M. Thomas
N.C. Bar No. 31834
christopherthomas@parkerpoe.com
PNC Plaza
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina 27601
Telephone: (919) 835-4626
Facsimile: (919) 834-4564

*Attorney for Plaintiff Cheyenne International, LLC*